**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gary H. MAROLF, in re application for return of seized property 1981 Mango Motor sailboat named "Asmara," Defendant–Appellant.**

No. 00–55730.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 17, 2001.

Filed Jan. 17, 2002.

Shawn R. Perez, Dana Point, California, for the defendant-appellant.

Elana Artson and Steven R. Welk, Assistant United States Attorneys, Los Angeles, California, for the plaintiff-appellee.

Before: BROWNING, FERNANDEZ and FISHER, Circuit Judges.

Opinion by Judge FISHER; Dissent by Judge FERNANDEZ

## OPINION

FISHER, Circuit Judge:

The Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1), provides for an award of fees to a prevailing party in a suit against the United States unless the government's position was substantially justified. We hold that the scope of the underlying action that the court is to review in assessing substantial justification extends only as far as the prevailing party's challenge itself. Thus, where, as here, the prevailing party challenges only the government's procedural defects, we determine only whether the government's procedural errors, and not its position on the merits, were substantially justified. As applied here, we conclude that the government was not justified in forfeiting Marolf's property without providing notice. Second, consistent with our precedents and the purpose of the EAJA, we hold that fees generally should be awarded where the government's underlying action was unreasonable even if the government advanced a reasonable litigation position. Accordingly, we reverse the district court's decision denying an award of attorney fees to Marolf.

## BACKGROUND AND PROCEDURAL HISTORY

On July 12, 1991, the Drug Enforcement Agency (DEA) seized the Asmara, a 55-foot sailing vessel that had been used to smuggle marijuana from Thailand to the United States. The DEA initiated administrative forfeiture proceedings against the Asmara, and, on September 20, 1991, declared the vessel forfeited to the United States.

Although the DEA suspected Marolf's interest in the vessel as early as mid-July 1991, and timely sent two notice of seizure letters concerning the vessel to Marolf's codefendant, the DEA sent no seizure notice to Marolf. On December 10, 1991, the DEA was advised that Marolf was the actual owner of the vessel and stated in an internal document that "[p]roper notification should be sent to Marolf." Nonetheless, the government again failed to send notice to Marolf.

On December 2, 1996, after the five-year statute of limitations for the government to commence judicial forfeiture proceedings had expired, 19 U.S.C. § 1621, Marolf filed a motion under Rule 41(e) of the Federal Rules of Criminal Procedure for the monetary value of the vessel. The district court concluded that the administrative forfeiture was constitutionally defective because of lack of notice to Marolf, but decided that the proper remedy for the defective notice was to consider the forfeiture on the merits, even though the statute of limitations had expired. The court relied primarily on the Second Circuit's decision in *Boero v. DEA*, 111 F.3d 301 (2d Cir.1997). *Boero* held that, where the DEA had failed to comply with the requisite notice requirement for an administrative forfeiture, the claimant could obtain a hearing on the merits in the district court rather than pursue an administrative remedy. *Id.* at 305–07. Marolf appealed.

In *United States v. Marolf*, 173 F.3d 1213, 1215 (9th Cir.1999) (*Marolf I*), we reversed, holding that the government could not reinitiate forfeiture proceedings because the statute of limitations had run. We relied on a decision of the Tenth Circuit, *Clymore v. United States*, 164 F.3d 569(10th Cir.1999), rendered after the district court's ruling, and remanded for a determination of the sum due Marolf as compensation for the vessel. *Marolf I*, 173 F.3d at 1217. On remand, the district court denied Marolf's request for attorney fees and Marolf appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal under 28 U.S.C. § 1291. The decision whether to award fees under the EAJA, including the district court's conclusion that the government's position was substantially justified, is reviewed for abuse of discretion. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir.2001). It is the government's burden to show that its position was substantially justified. *Id.* The district court abuses its discretion if it "base[s] its decision on an erroneous legal conclusion or a clearly erroneous finding of fact." *United States v. Rubin*, 97 F.3d 373, 375 (9th Cir.1996) (quoting *Andrew v. Bowen*, 837 F.2d 875, 877 (9th Cir.1988) (internal quotation marks omitted)). "Interpretation of the EAJA is a question of law reviewable de novo." *Id.* (quoting *Andrew*, 837 F.2d at 877).

## DISCUSSION

### I.

In any action brought by or against the United States, the EAJA requires that "a court shall award to a prevailing party other than the United States fees and other expenses ... unless the court finds that the position of the United

States was substantially justified." 28 U.S.C. § 2412(d)(1)(A).[1] "Substantially justified means justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (internal quotation marks omitted). A substantially justified position must have a reasonable basis in both law and fact. *Id.*

■ We consider whether "the position of the government was, as a whole, substantially justified." *Rubin,* 97 F.3d at 376. In making this determination, we look both to the government's position during litigation and to "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(1)(B). "Thus we must focus on two questions: first, whether the government was substantially justified in taking its original action; and, second, whether the government was substantially justified in defending the validity of the action in court." *Gutierrez,* 274 F.3d at 1258 (quoting *Kali v. Bowen,* 854 F.2d 329, 332 (9th Cir.1988) (internal quotation marks omitted)). To prevail here, the government must establish that it was substantially justified on the whole, considering, first, the taking of the Asmara through administrative forfeiture without notice, and, second, continuing to pursue the forfeiture notwithstanding defective notice and expiration of the limitations period.

## II.

We turn first to the reasonableness of the underlying action. As an initial matter, we must define the boundaries of the underlying action that we are required to examine.

### A.

■ The government argues that the relevant underlying action includes two is-

sues not contested by Marolf—whether the seizure of the Asmara was supported by probable cause and whether Marolf had a valid defense to forfeiture on the merits. Neither of these issues is part of our inquiry, however. As the EAJA plainly states, we look "to the action or failure to act by the agency *upon which the civil action is based.*" 28 U.S.C. § 2412(d)(1)(B) (emphasis added). When a party challenges a government action on procedural or due process grounds alone, the merits of the underlying regulation or forfeiture are not proper subjects for our review. *See, e.g., Corbin v. Apfel,* 149 F.3d 1051, 1052–53 (9th Cir.1998) (holding that substantial justification inquiry focused on government's decision to defend procedural errors committed by administrative law judge, not government's position as to whether movant was actually disabled); *United States v. $12,248 U.S. Currency,* 957 F.2d 1513, 1517 (9th Cir.1992) (holding that inquiry must focus on justification for government's delay in bringing forfeiture action in violation of movant's due process rights, not on whether probable cause existed for forfeiture); *Andrew,* 837 F.2d at 878–79 (focusing inquiry on whether government was substantially justified in failing to comply with procedural requirements of notice, comment and publication in issuing social security regulation, not on the reasonableness of the substance of the regulation). This is so because a government's procedural abuses can be as troubling as its substantive ones.

Because Marolf challenged only the adequacy of notice, and not the existence of probable cause to seize the Asmara or the merits of the forfeiture action, we look only to the government's failure to provide notice in determining whether the government's underlying action was substantially

---

**1.** The government concedes that Marolf is the prevailing party.

justified. As in *$12,248 U.S. Currency*, it is irrelevant whether the forfeiture could have succeeded on the merits if the government had complied with due process.

## B.

We turn, then, to determining whether the forfeiture of the Asmara without notice was substantially justified. We hold that it was not. We previously held that the government's forfeiture was constitutionally and statutorily defective for lack of adequate notice to Marolf and therefore was void. *Marolf I*, 173 F.3d at 1217 (explaining that "the government admits that it erred by failing to provide Marolf with notice of the seizure and intent to forfeit the Asmara after it became aware that Marolf had an interest in the vessel."). The government's briefs to this court concede: "[a]t no point in the litigation did the government take the position that it was justified in failing to give Marolf notice of the administrative forfeiture proceedings." We accept the government's proper concession and hold that the government's underlying action was not substantially justified. *Accord $12,248 U.S. Currency*, 957 F.2d at 1517 n.5 ("[I]f ... a *due process* violation is not enough to trigger a finding that the government was not 'substantially justified' under the EAJA, the EAJA would amount to nothing but a hollow statutory shell offering little of substance to prevailing parties.").

## III.

We next review the reasonableness of the government's litigation position. We "evaluate the basic *arguments* the government put forth to determine whether they have a reasonable basis in

law and fact." *Abela v. Gustafson*, 888 F.2d 1258, 1264 (9th Cir.1989) (internal quotation marks omitted). Here, the government litigated on two grounds: (1) whether it could go forward with judicial forfeiture notwithstanding the void administrative forfeiture and the expiration of the statute of limitations; and (2) whether Marolf's Rule 41(e) motion was barred by laches.

Although the government's position ultimately was rejected on appeal, "the government's failure to prevail does not raise a presumption that its position was not substantially justified." *Kali*, 854 F.2d at 334. Similarly, that the district court initially agreed with the government's position is not "conclusive as to whether or not the government was reasonable." *United States v. Real Property Known as 22249 Dolorosa Street*, 190 F.3d 977, 982 (9th Cir.1999) (quoting *Oregon Natural Res. Council v. Madigan*, 980 F.2d 1330, 1332 (9th Cir.1992)).

In light of *Boero*, an out-of-circuit case suggesting a hearing on the merits was possible when a forfeiture had been declared void for lack of notice, and the Ninth Circuit's lack of authority on the issue at the time, we conclude that the government was substantially justified in arguing during the litigation that it could continue to pursue forfeiture. "When the case presents ... a close question of law, we cannot say the district court abused its discretion in finding the government's position was substantially justified." *TKB Int'l., Inc. v. United States*, 995 F.2d 1460, 1468 (9th Cir.1993).[2] Although *Boero* was not squarely on point because it did not contain a statute of limitations issue analo-

---

**2.** We note, however, that whether an issue is one of first impression is but one factor to be considered; it is not dispositive. *Gutierrez*, 274 F.3d at 1261 ("[T]here is no per se rule that EAJA fees cannot be awarded where the government's litigation position contains an issue of first impression."); *Kali*, 854 F.2d at 332 n. 2 ("The court's observation that the Ninth Circuit had not yet addressed the issue was an appropriate component of the inquiry into substantial justification.").

gous to Marolf's case, the decision gave the government a reasonable basis upon which to pursue its position. The more analogous decision on which we relied in *Marolf I—Clymore*—had not been decided at the time the government advanced its position. Additionally, while most circuits have joined *Marolf* and *Clymore* in rejecting the government's argument, one circuit adopted the government's position after we decided *Marolf I*, an additional indication of reasonableness.[3]

■ We also note that Congress enacted legislation after we decided *Marolf I* permitting the government to proceed with forfeiture proceedings in cases such as Marolf's. *See* 18 U.S.C. § 983(e)(2)(A) (allowing forfeitures judicially set aside for lack of notice to be refiled). Depending on the circumstances of a particular case, subsequent changes in decisional or statutory law may be a factor to consider in determining whether the government advanced a reasonable position, although we are mindful that we measure reasonableness at the time the government advanced its position. *See Barry v. Bowen*, 825 F.2d 1324, 1330 (9th Cir.1987) (stating that we are concerned with "the underlying government conduct at issue and the totality of circumstances present before and during litigation"); *cf. Gutierrez*, 274 F.3d at 1259 (holding that subsequent repeal of

regulation did not make government's failure to comply with regulation reasonable). Here, the new law enacted by Congress supports the conclusion that the government's litigation position was reasonable as a matter of public policy, but does not show that the government's interpretation of the law as it existed at the time was reasonable. Regardless, we are persuaded that the government's litigation position to pursue forfeiture notwithstanding the expiration of the statute of limitations was reasonable.

■ The second argument advanced by the government during the litigation—that Marolf's Rule 41(e) motion was barred by laches—was not substantially justified. As we concluded in *Marolf I*, the government had no substantial basis for arguing laches because "any prejudice to the government was attributable to its own inexcusable delay." *Marolf I*, 173 F.3d at 1219.

## IV.

■ Notwithstanding the government's partly reasonable litigation position, we hold that the government's position as a whole was not substantially justified. In so holding, we "properly focus[] on the governmental misconduct giving rise to the litigation." *Comm'r, INS v. Jean*, 496 U.S. 154, 165, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).[4] A reasonable litigation posi-

---

**3.** The Sixth Circuit adopted the government's position in *United States v. Dusenbery*, 201 F.3d 763, 768 (6th Cir.), *cert. denied*, 531 U.S. 925, 121 S.Ct. 301, 148 L.Ed.2d 242 (2000). The majority of circuits to address the issue have followed *Marolf I* and *Clymore*. *See Kadonsky v. United States*, 216 F.3d 499, 506–07 (5th Cir.2000), *cert. denied*, 531 U.S. 1176, 121 S.Ct. 1151, 148 L.Ed.2d 1013 (2001); *United States v. One Toshiba Color Television*, 213 F.3d 147, 156 (3d Cir.2000).

**4.** In *Jean*, the Supreme Court quoted extensively from the EAJA's legislative history, which states:

Congress expressly recognized that the expense of correcting error on the part of the Government should not rest wholly on the party whose willingness to litigate or adjudicate has helped to define the limits of Federal authority. The Government error referred to is not one of the Department of Justice's representatives litigating the case, but is rather the government action that led the private party to the decision to litigate. 496 U.S. at 159 n. 7, 110 S.Ct. 2316 (quoting S. Rep. No. 98–586, p. 10 (1984)) (internal citation and quotation marks omitted). *Jean* also observed that "the specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unrea-

tion does not establish substantial justification in the face of a clearly unjustified underlying action.[5] See *Wilderness Soc'y v. Babbitt*, 5 F.3d 383, 388–89 (9th Cir.1993) (holding government was not substantially justified in allowing grazing in wildlife refuge even though government presented reasonable ripeness defense during litigation); *Andrew*, 837 F.2d at 877–80 (holding government was not substantially justified in issuing regulation without complying with statutory notice requirements even though government presented reasonable litigation defense that movants had not exhausted administrative remedies); *see also Jean*, 496 U.S. at 157 n. 7, 110 S.Ct. 2316 ("[Congress intended] to provide for attorney fees when an unjustifiable agency action forces litigation, and the agency then tries to avoid such liability by reasonable behavior during the litigation.") (quoting H.R. Rep. No. 98–992, pp. 9, 13 (1984)); *McDonald v. Secretary of HHS*, 884 F.2d 1468, 1476 (1st Cir.1989) ("In the present case we can concede that many of the government's *litigating positions* were reasonable and, hence, 'substantially justified.' The central question facing us, however, is whether the underlying *agency action* was reasonable.").

We hold that the district court abused its discretion because it denied Marolf's fee motion on the basis of legal error. *See*

*Rubin*, 97 F.3d at 375. The district court denied fees based solely on the government's litigation position, disregarding the unjustified underlying action. As we stated in *Wilderness Society*, this was clear legal error: "The court was correct in finding that the [government's] procedural litigation defense was substantially justified. The court erred, however, in ending its analysis at this point." 5 F.3d at 388; *see also Gutierrez*, 274 F.3d at 1259 ("The district court erred in not addressing the reasonableness of the underlying conduct and basing its denial of fees solely on the government's litigation position.").

The government has not met its burden of demonstrating that its position as a whole was substantially justified. We therefore reverse and remand for an award to Marolf of attorney fees relating to his Rule 41(e) motion, his appeal on the merits in *Marolf I* and the remand that followed.

**REVERSED and REMANDED.**

FERNANDEZ, Circuit Judge, Dissenting:

I dissent because, it seems to me that taking a proper view of the case as a whole, the government's position was substantially justified. *See Comm'r v. Jean*, 496 U.S. 154, 161–62, 110 S.Ct. 2316, 2320,

---

sonable governmental actions." *Id.* at 163, 110 S.Ct. 2316. In *Jean*, the government contended that attorney fees should not be awarded for the portion of the litigation concerning the award of attorney fees. The Court was unsympathetic to that argument: "[i]f the Government could impose the cost of fee litigation on prevailing parties by asserting a 'substantially justified' defense to fee applications, the financial deterrent that the EAJA aims to eliminate would be resurrected." *Id.* at 164, 110 S.Ct. 2316. The purpose of the EAJA also would be undermined if the government automatically could impose the costs of litigation on prevailing parties by asserting

a reasonable litigation defense in the face of a clearly unreasonable underlying action.

5. We stop short of adopting a per se rule that the government's position as a whole never may be substantially justified if the underlying action is unreasonable. Although our precedents may be susceptible to that interpretation, there may be cases in which a reasonable litigation position will outweigh the unreasonableness of the underlying conduct, and we do not foreclose that possibility. We also note that a reasonable underlying action does not preclude a fee award to a prevailing party when the government pursues litigation unreasonably.

110 L.Ed.2d 134 (1990); *United States v. Rubin,* 97 F.3d 373, 375 (9th Cir.1996). That clearly appears if we start from the beginning.

It can hardly be contested that the seizure of the Asmara was justified. Once that was done, the government had five years to commence a forfeiture action. *See* 19 U.S.C. § 1621. It did not do so. For his part, Marolf did nothing until he filed a motion for return of the Asmara after the five years had passed. *See* Fed. R.Crim.P. 41(e). The government then attempted to defend that motion by asserting the right to forfeiture, which it could do if the statute of limitations did not stop it from doing so. It did have a decent (substantially justified) argument that it was not barred from making that assertion. At least some jurists would say so. *See Kadonsky v. United States,* 216 F.3d 499, 503–06 (5th Cir.2000), *cert. denied,* 531 U.S. 1176, 121 S.Ct. 1151, 148 L.Ed.2d 1013 (2001); *United States v. Dusenbery,* 201 F.3d 763, 767–68 (6th Cir.), *cert. denied,* 531 U.S. 925, 121 S.Ct. 301, 148 L.Ed.2d 242 (2000); *Boero v. Drug Enforcement Admin.,* 111 F.3d 301, 306–07 (2d Cir.1997). So what can possibly justify an award of fees against it?

We know that the government was wrong about the effect of missing the statute of limitations, or at least it was wrong in this circuit. *See United States v. Marolf,* 173 F.3d 1213, 1220 (9th Cir.1999) (*Marolf I*). But turning out to be wrong is not enough to justify an award of fees. *See Hill v. INS (In re Hill),* 775 F.2d 1037, 1042 (9th Cir.1985). What else? Well, in the interim the government had purported to forfeit the vessel and had not given notice to Marolf, although it should have. *See Marolf I,* 173 F.3d at 1217. I fail to see the significance of that bevue. It simply meant that as to Marolf the forfeiture was void, a nullity. *See id.* at 1220; *see also Kadonsky,* 216 F.3d at 503. Yes, and ...? And Marolf's rights were not affected in any way whatsoever; he was no worse off than he would have been had the government done nothing at all after it seized the Asmara. Had Marolf wanted to retrieve this drug-tainted vessel right after it was properly seized, he would have had to make a motion, or file a claim. And he would have lost that litigation. As it is, all he had to do was file a motion, and he wins the litigation because of the statute of limitations. His circular argument that he should get his fees because the government did not commence proper proceedings soon enough is just a claim that the statute of limitations ran; that claim is the very one the government contested with substantial justification.

It is quite enough that pursuant to the law as explicated by this circuit, a drug smuggler gets $253,763.60 of his drug-related assets free and clear. It is more than enough to award him attorney's fees also, despite the fact that the government perpetrated no actual wrong upon him when it seized the Asmara and then failed to commence proper proceedings within five years.

Thus, I respectfully dissent.